131604 Brian Sexton v. Panel Processing Inc. at all. Arguments not to exceed 15 minutes to be shared by appellant and amicus. 15 minutes for appellees. Mr. Pfeiffer for appellant. It pleases the court, William Pfeiffer on behalf of appellant Brian Sexton. I'm appearing here from Alpena, Michigan, and it is significantly colder there than it is here, but I've been advised that Cincinnati is really cold right now compared to normal. This is my first time appearing in the United States Court of Appeals. I will try not to violate any procedure, and I'm assuming that the court will... You're doing great so far. The court will tell me what I have. I intend to speak, argue for four minutes and reserve one minute for rebuttal. Mr. Silverman from the Department of Labor will take the remaining time, including some for rebuttal. That sounds good. As the panel is aware, this case involves the interpretation of Section 510 of the Employee Retirement Income Security Act, otherwise known as ERISA. And as the court also is aware, different panels of the Court of Appeals have come to the same conclusion that there should be afforded protection under the Act. I won't get into the splits themselves, but they're not... I don't want to make it sound like it's a bright line that three have said exactly the same thing and three have said exactly the opposite, but they pretty much line up that three have seemed to support the argument that we're making here today. Three have certainly said that that's not... So the one thing you just said, which I think is the way the briefing's been done, is that the email was unsolicited. There was no question that preceded the email. There is nothing factually, Your Honor. That's correct. This particular motion by the appellee in the district court was done with... Well, was filed without much discovery being had. We did argue at the district court level that the district court should not make a decision until it allowed us some additional discovery, and here's why. Is that called a Rule 56-F motion? Is that what that is? Have I got the right number and letter? I believe so. Did you file that motion? I did not file that motion. I filed, as part of my brief, an affidavit. The court rule allows an affidavit to be filed stating that it haven't had discovery and that he thought it was meaningful to the court before it made his decision to allow additional discovery. Judge Ludington did not... I don't want to say he didn't consider that, but oral arguments were scheduled in the district court and then the order from the district court was entered without oral arguments. Oral arguments were... If I remember right, the rule, and I've forgotten whether it's 56-F or they might have changed it to D, but in any event, whatever it is, if I recall right, you have to say what you expect to this discovery will yield, and in this case, that would be information presumably as to whether there was an inquiry or a proceeding relating to the act, and I'm trying to figure out what discovery did you envision that would have been relevant to that question. Here's what I think may be relevant for the determination. That's as follows. The board of directors of panel processing is elected by essentially the shareholders of the ESOP, and they get... Each share gets one vote, and the board of directors, the bylaws themselves do not specifically state how somebody's nominated to the board of directors. So what happened is they sent out the ESOP trustee direction form saying you can vote for these two individuals. What happened was there was a grassroots effort by the employees to write in two other candidates. Those two other candidates received the most votes. The annual shareholders meeting was scheduled for April 15th. It got canceled between April 15th and April 29th. It's my position. I think discovery would support this if we got to that point. There was some discussion amongst the board because when my client walked in the door on August 29th, he was removed as a trustee of the ESOP and was removed as a board of a complaint. Presumably you win. If the act requires there to be an inquiry, meaning something from either a third party or from, in this case, the company, then you lose. And I don't see where any of the things that you're talking about relative to discovery really bear on that point one way or the other. Well, I respectfully agree with your position, but... Are they ever respectfully agree or respectfully disagree? One other issue with that, if you look at Mr. Sexton's what's considered his... That shows he's not sure. His unsolicited complaint, I guess, and there was some talk about this maybe in the briefs, if he'd had a question mark at the end of it, would it have met the definition in terms of was he asking for information? Was he giving information? Didn't he request information just before this? I thought that he requested the results of the election. He did. He did request the results. That's correct. Is that completely insignificant? Well, I don't know that it's completely insignificant. That might be something that, depending upon what came out of discovery on that issue, it might be something that might have supported his argument that there had been some inquiry. I'm not sure it has anything to do with discovery because your theory of the case was not that he was fired because of that question or that answer. In other words, no one's saying... You've never said your theory of retaliation was that he asked the results of the election, they told him the results of the election, and he was fired. That's just not your theory of the case, right? I'm not saying that in and of itself is a... So that question and that answer couldn't have anything to do with the retaliation claim. Well, what happened subsequent to that, basically the board invalidated that election. But I mean, we're trying to focus on things that could fit under the heading of information or inquiry. Okay. Right? Because that's... I mean, that is the whole point of this case, right? I agree. So Judge White's pointing out a question, the question being, what were the outcome of the election? Answer, here's who was elected. And as I read your complaint, you don't mention that question and answer as part of your theory of retaliation for very obvious reasons. That's not why he was fired. Of course he wasn't fired because he asked what the results of the election were. What was the time span, I'm just curious, between asking that question, getting the answer? I can't tell you that, Judge White, with absolute certainty. I know the election, the ballots were to be returned, I believe, by April 15th, which is the annual shareholders meeting. I just want to get an answer on this. Are you arguing, because I didn't see that in your complaint or in your briefs, that that question and that answer are the relevant inquiry or information in this case? I'm not arguing that in and of itself is a relevant information inquiry. As part of discovery, that may have been something that supports our argument in that regard, but I'm not relying on that to try to convince the court that that's the inquiry or information that should give you reason to overturn what the district court judge did. Why don't we hear from the lawyer from the department? Thank you for your time, and welcome to Cincinnati, and maybe you should stay a while if it's colder in Alpena. May it please the court, Steve Silverman for the secretary. The list of section 510 protects any person from retaliation... And I take it you're focused on the information that's in the Sexton email to the chairman? Yes, your honor. When your theory of what the quote information was would have been in that email, would you say? Yes, your honor. Okay. It's my position that the information contained in that email is an inquiry, because although inquiry is not defined by the statute, it's open to a range of interpretation, and this court should follow the Seventh Circuit and say that the definition of inquiry includes the action of questioning or a grievance. And Mr. Sexton's email in this case... The Easterbrook opinion? Yes, your honor. Even in that one, there was a question later. So in other words, here... I mean, I get the idea of finding any way possible to label something an inquiry. I get that theory of it, and I would say that was the theory of the Seventh Circuit case. But they did have a question later. I don't see where the question is here that bears on this information. A few responses to that, your honor. Mr. Sexton's email in this case was unequivocally questioning the actions of the Board of Directors of Panel Processing in terms of the legality of those actions under ERISA. And he was certainly questioning whether they were going to remedy their acts in order to bring them into compliance with ERISA. Every complaint becomes a question, becomes an inquiry? Is that the line of reasoning? Every complaint is not necessarily an inquiry. There is a question as advised by the Supreme... No, but you're trying to say... Instead of saying he's complaining, you're saying he's questioning their actions. And that's a clever word to use because a synonym for question is inquiry. Is that the way you're trying to do this? That is within the scope of the definition of inquiry is the act of questioning, your honor. So the inquiry and the information can be the same statement? Well, the requirement of giving information and an inquiry are distinct requirements. We're not saying that every instance of giving information is necessarily an inquiry. So we're not conflating those two terms. But the question is what is an inquiry? And it's absolutely within a definition of inquiry, the act of questioning. And Mr. Sexton's email was questioning the actions of the Board of Directors. With respect to the judge's opinion... Why would we interpret the statute to say that, and maybe you wouldn't, to say that a complaint is not protected, but a complaint phrased in the form of a question is protected? Well, your honor, interpreting the protection of Section 510 to turn essentially on whether there's been a period or a question mark at the end of an email or a comment or any sort of communication, it's not supported by the statutory text. And it's not practical to, as a way of protecting employees who merely want to report wrongdoing. The Supreme Court has advised not to construe statutes in a way that would create traps for the unwary. And it's simply not practical for an employee who wants to report illegalities or wrongdoing to be within the scope of a protection because they put a question mark. Say that if you ask a question, it has a question mark at the end, or if you make a complaint that doesn't have a question implicit in it, both of those are protected. Well, yes, your honor, although the complaint, there are other requirements of ERISA Section 510, but yes, your honor, so long as a complaint, for example, as guided by the Casting Case, has to provide adequate notice and provide, excuse me, give a reasonable, objective person would believe that the employee was asserting a right under the statute. So it's not that every, we agree with the Seventh Circuit, your honor, that not every trivial bellyache would trigger protection. So you're at the water cooler and you complain about something, that's not necessarily going to trigger ERISA Section 510 protection. But if a reasonable, objective person would have a complaint regarding ERISA violations was being made to management, then ERISA Section 510 should apply. And Mr. Sexton's email to management did just that. And in the case of Mr. Sexton, the issue is particularly stark because he was both an employee and a fiduciary. So he was forced essentially to risk his job in order to fulfill his fiduciary responsibilities to the plan. He was caught between a rock and a hard place, either fulfilling a fiduciary duty and risk your job, or say nothing and risk boosting your duties to the plan. ERISA Section 510 does not... What do you do about this textual point? If you read, you know, because one way to think about inquiry proceeding is look at those together and say, they actually require something a lot more formal than just a give and take, right? I mean, that would obviously be very troubling for your position, but that is one way to look at this, that inquiry is more than just an individual. But let's just say that's not true. And let's say inquiry is almost as free, we'll say it's just as free flowing as you say it is. It can even be, the inquiry can actually be the statement of the individual complaining. Once you start down that road, then you're stuck with the fact that it's information or testimony. And so now we're talking about information now isn't tethered to anything conceivably related to the act. And so that seems to be a really troubling consequence of accepting your argument that it's just going to be statements about anything that suddenly are information and he was fired because of information in this inquiry, inquiry seemingly meaning anything. So how do we deal with that? Well, Your Honor, we're not saying that every instance of giving information is an inquiry. As I was saying that there's a standard, a threshold as advised by the Casting case that must be met. So every instance of that standard, the guidance from the Supreme Court is whether a reasonable objective... You say a complaint, unsolicited, there's no solicitation for it, can still satisfy the inquiry? A complaint to management, yes, Your Honor. Yes, a complaint is a form of giving information and the complaint to management about a list of violations or legal violations is certainly qualified within the definition of inquiry as questioning the behavior of the management of, excuse me, the company in regards to the ERISA plan. So we're not, but we're not saying that those are the same thing. As I indicated, we don't dispute that trivial bellyaches would not qualify for protection and we support... You say that, but I don't understand how you say that because it makes sense as a matter of policy. I agree it makes sense as a matter of policy, but I'm struggling with how I take that policy and fit it into this language. I don't understand why trivial bellyaches aren't information in the inquiry given how you define inquiry. That's the problem. Because Your Honor, as I mentioned in the Kasten case, the question is whether a reasonable objective person would believe that that person is asserting rights under the statute when making a complaint to management under the statute. And I don't think that a trivial bellyache satisfies that threshold, that casual remarks at the water cooler satisfy that threshold. That is a threshold that has to be met. And Mr. Sexton's email, in this case, unquestionably reaches that threshold. When he sends an email with both an employee and a fiduciary in which he's flagging violations of ERISA and asking if management is going to fix those problems, that meets the threshold suggested by the Kasten case. You have a trivial bellyache to management and you're fired. Okay? It's an email, it's about something about the work environment, it's to management, and the next day you're fired because of the email. Okay? So that's the fact pattern. The person has been discharged, they've given information, and it's in your kind of inquiry. I understand your preference for not having the Act cover that. I share it. I don't understand how you do it if we have opposing definition of inquiry gets rid of that problem. Because the definition of inquiry that we're advocating is confined by the reasonable objective person standard advanced by the Supreme Court in the Kasten case. Wait, can I just... Kasten has nothing to do with the meaning of the word inquiry. Kasten has to do with the meaning of the word file. So I don't understand how Kasten has anything to do with a reasonable person standard and what inquiry means. That escapes me except for sounding good. It just doesn't connect it to the statute. Well, Your Honor, that discussion in Kasten came up in the context of whether the definition of filed as including oral filings would provide notice to employers. And that same issue is raised by your hypothetical regarding trivial bellyaches. How is an employer to know whether this is a protected activity? And the court addressed that concern by saying that we need it for a reasonable objective person to believe that the communication, in that case the filing or the open, sorry, the oral complaint, in this case the complaint by an individual, for a reasonable objective person to believe that that satisfies, excuse me, that the employee was making a complaint or was setting lights on his statute. I get your position. But if I'm getting it, I think it reads inquiry out of the statute. Because I think what you're saying is the way to solve the trivial bellyaches problem is not to apply this to all information. What we're going to do is we're going to do this reasonable person test, a la Kasten, for trying to figure out if that's the kind of complaint that would lead people to worry about making similar complaints because they might be retaliated against. That's all well and good as to information. I don't understand what it has to do with our problem with giving content to the word inquiry. Well, I don't think, I mean, trivial bellyaches are information. It's not about confining giving information. That's certainly a broad term. And inquiry, it should be noted that the statute expressly adopts... Reasonable person test applies to defining inquiry and applies to defining information? No, Your Honor. Information may be said as simply giving information, which may be given in any manner, informally, formally, or written, by declaration, or by question. So that was certainly a trivial bellyache, a water-cooled comment, is giving information. But as far as confining the definition of inquiry, we were looking to Kasten for guidance, excuse me, for guidance to make limits on inquiry, while also acknowledging that the statute expressly adopts the broadest possible construction of that word because it applies to any inquiry. And any inquiry doesn't mean the typical inquiry, the normal inquiry. It means any inquiry. In this case, as the Seventh Circuit explained, any inquiry includes the acts of questioning, which does apply to... What part of the email is inquiry, in your view? You know what it says. I believe that your actions all the way down to, I'm going to bring these violations to the department's attention unless they're remedied. What part of that is an inquiry? We think that there's really two inquiries made by Mr. Sexton in the email. The first is that he's questioning the legality of the actions under ERISA by asserting that they have, their actions with regard to unseating him as a trustee and with regard to the Board of Directors violated ERISA. He's questioning those actions. And then secondly, he's asking, he's questioning, are you going to remedy your actions? I understand, Your Honor, that his statement did not end in a question mark, but it seems that if his email had merely ended in a question mark, it should not affect the result in this case, because the context of the email is that he's questioning... I totally agree. You can't just put a question mark there and make it an inquiry. I'm just looking at the content of the words. It's a complaint. But it's a complaint that certainly, given that he's a fiduciary, that he is questioning the actions of management and he's questioning whether management is going to remedy... Would you agree that complaints in general are not inquiries? That complaints in general are not inquiries? Just in normal English, fair reading of words, a complaint in general is not an inquiry. So what I'm trying to figure out is if you're saying, well, this was really an unusual complaint and that's what made it an inquiry, or if your view is, no, I think we're supposed to read inquiry broadly, so I think in general complaints are inquiries. The second formulation, your honor, I think that... Complaints in general are inquiries. In general, complaints likely are inquiries because they are questioning some sort of behavior. I see my time has lapsed, your honor. Okay, no, thanks for your helpful argument. You'll get some rebuttal time. We'll hear from the other side. Good afternoon, your honors. I'm Donald Sharg, appearing on behalf of the defendants, appellees, panel processing companies. We see this issue as a question of statutory interpretation. And when you look at section 510 of ERISA, we break it down into two parts. And you have the statute in front of you and it has, because the person has given information in any inquiry. So you have to give information and there has to be an inquiry following that information. Or the inquiry can be before the information, but the information is two separate parts. You would agree the email was information? The email was information. You would agree with that? Yes. So it's about inquiry. But the email was not an inquiry. In fact, the judge found that the email was an inquiry. I'm assuming. The judge found that the email was information. We haven't challenged that determination. Why send it if he's not, he's basically asking, what are you going to do about it? I mean, that's what that's what the email is. It's saying, this isn't right, what are you going to do about it? When you write a letter of complaint to a business, you expect a response. I mean, you don't end it and what are you going to do about it? It's understood that you're asking for a response. And it's implied, what are you going to do about it? Well, anytime you file a complaint or make a complaint, it's going to be, you're saying it's the same thing. That's reading inquiry out of the statute. It says you have to give information and there has to be an inquiry. So the inquiry is the response to the information. Okay, you're complaining about what we did. And you say, what do you want us to do? This is what we're going to do. What other complaints do you have? There has to be some communication following that initial statement of information. So what is, what's necessary? A separate inquiry? A separate inquiry. Because otherwise you're reading inquiry out of the statute. Okay, and the business that is responding has to be the entity that's conducting the inquiry? Yes. And even if you take the George case, the George case makes that same distinction between information and inquiry. In the George case, Mr. George made, gave him information. He complained. He complained about his money not going into a special account, an ERISA account. And Judge Easterbrook found that wasn't enough. It became a 510 case because there was a response to him when he complained. So if you say every complaint is an inquiry, then you're reading inquiry out of the statute. But you know, I think one thing Judge White's saying, which I share this instinct and intuition, it seems so formalistic. I mean, you know, so this whole case turns on whether the employer picks up on the dialogue. I mean, so, you know, it's possible the chairman responds by saying, what are you talking about? Now, is that our inquiry? Is that how this all works? As long as at some point down the road there's a question asked? There has to be a question asked and a response. And that's, it's the George case. And Judge Easterbrook is very clear about that. There has to be a question and a response. And he even says in the George case that if there's no response, there's no inquiry. And that's what happened here. There was no response. There was an email, there was a threat, whatever you want to call it, a threat or a complaint. You know, the other way to solve the formalistic point is to, I think, maybe give the language a more natural meaning, which the more natural meaning is inquiry is not any question of any kind, which is what leads you down the road of all these funny hypotheticals. Inquiry should be read in connection to the next word, proceedings relating to the act. So it's some kind of formal inquiry. And short of some kind of formal inquiry into whether someone's qualified for this or that ERISA benefit, and there's information given in that inquiry or proceeding, you know, you can write the statute another way, but that's what inquiry means. We accept that too. And here there's no formal inquiry. You'd be committing malpractice if you didn't. But is there any authority for that? I mean, is there any legislative history that supports that way of thinking about it or other case law? Believe me, we searched for the legislative history and spent probably a couple hours looking for the legislative history. You think it's pretty useless? There was, couldn't find any on this part. I see. But there are court cases that accept that position. The early cases that rejected... Does the Fourth Circuit take that position? Is that the more formal approach? It was the Third Circuit or the Fourth Circuit. I can't remember which. I put the spin on two cases that found that no inquiry was necessary, and there's four cases because I put George Case in with the cases that require an inquiry. I'm clear, it wasn't the Second Circuit. It may have been the Fourth or the Third Circuit that made that distinction and said you need a formal inquiry from the employer. But I think we could meet any standard... What's your view of what happens if you're right? So this case was, you filed, I think, two state law claims. You remove them on complete preemption grounds. Let's say you're right about that. And now you say, oh, but the ERISA claim fails. What happens? Does he go back now to state court and he has a shot at the... Because now there is no federal claim if you're right. So does he get to go back to state court and try state law claims with, yes, you can respond by saying those claims relate to an ERISA plan and therefore they're preempted,  I don't believe so, Your Honor. Why shouldn't he? I mean, it seems funny that you get to remove and say it's... You filed a state law claim that's really a federal law claim. That's what complete preemption means. We say, okay, fine, but you can't get relief on these facts. Why doesn't he get another shot at dealing with whether he has a freestanding state law claim and then he has to deal with the preemption defense? Because whether or not he has a valid ERISA claim doesn't diminish the fact that he's making a claim under ERISA. And so if this court says he is not establishing a claim under ERISA, that should finish the case. If he goes back to state court, then we're going to have a state court judge making decisions about ERISA types of claims. What if we're dubious about the complete preemption premise of the removal? That wasn't raised on appeal. Well, isn't it jurisdictional? I guess if you want to raise it, then you can raise it if it's jurisdictional, but that was not raised. And I haven't briefed the issue in a year and a half, but I believe that we have complete jurisdiction in the courts in this circuit. We rely on support from the circuit to show that there's complete jurisdiction, complete preemption. You are the judges. You can do what you want with that issue. That's not exactly how it works. But if you look at it, you have three cases that require that there be an inquiry directly from the employer to the employee. And we don't have that in this case. That's the King case, the Nicolau case, and the Edwards case from the third, fourth, and second circuits. We have the George case, which says there has to be an inquiry. But we're going to, based upon Kasten, we're going to say the inquiry could be either way. Do you know if there have been any, because these cases, this issue has been lurking around for a long time. I'm a little surprised that there hasn't been an effort to amend the statute, because this is an unusual way to write a retaliation provision. There are lots and lots of retaliation provisions out there that follow the intuition that if you complain, you can't be retaliated against. And so I'm just curious if there was ever an effort to try to amend this. Obviously, it would have failed. But was there an effort to amend this to say it applies to complaints? I have not seen any evidence of any effort to try to amend this 510. And I think the absence of that is an acceptance of the court decisions that have been coming out. Because with the ADA, Congress was unhappy with the way the courts were interpreting the ADA. And in 2009, we had to change the ADA to make it more difficult to defend against claims in response to the court decisions. And so under the George case, which this court relied on greatly, George requires a complaint or a providing of information and a separate inquiry. And clearly here, in this case, there's no separate inquiry. He sends the email, he says he's threatening to go to the states, he's threatening to go to the federal government, to the Department of Labor, and there's absolutely no response and no change in any of the actions that the company took. Well, I think we understand your position. All right. Thank you, Your Honor. Do you have any other questions? No? Okay. I think the amicus, thank you very much for your time. I think the amicus, Mr. Silverman, you have some... I have reserved one minute that the court will give to me. I thought I understood that the amicus was going to make the rebuttal argument. Whoever wants to can do it. They both reserve. Yeah, yeah, but it was also about the rebuttal as well. Your Honor, I have three points I'd like to make on rebuttal. First, as for George's case, George finds that this provision is ambiguous, and as when you have an ambiguous anti-retaliation provision, George finds that those ambiguities should be resolved in favor of the employees. It also followed Kasten's instruction that it would not make sense in this context to discard definitions of inquiry that make sense in the anti-retaliation provision. So with that backdrop, it then concluded that inquiry included the act of questioning and covered Mr. George's actions. But when it discussed those actions, it said that both the notification and the questioning were part of the inquiry. It did not draw a distinction and say that only the questions were part of the inquiry. It said that the notification was. We're not supported by the court. What if Sexton, the day after the email, had filed the lawsuit? Next day, files the lawsuit. Would that have been an inquiry? Well, a lawsuit more probably falls under a proceeding, Mr. Your Honor. Okay, so fine. You're going to say, I'm just curious. So if the next day he files his lawsuit, the lawsuit becomes either the inquiry or the proceeding necessary to have a cognizable claim. Well, are you saying that he's filed because he filed a lawsuit? So, no, no, no, no. So what happens here is he files this email, okay? The next day he files the lawsuit. Would the lawsuit itself count as an inquiry? A lawsuit may count as an inquiry, Your Honor. I mean, the terms inquiry and proceeding do not mean the same thing, but they may overlap. So in that sense, a lawsuit may be considered a proceeding and or an inquiry, because there is some overlap in those terms. Would you do anything with the fact that there are all these other federal statutes that by their terms clearly cover complaints? Yes, Your Honor. I mean, just because other statutes use the word complaint, it doesn't follow that because ERISA does not use the word complaint that the word inquiry doesn't cover complaints. The question in this case is whether inquiry encompasses complaints. And this court has stated that Congress intended when it passed Section 510 to provide the same retaliation relief as provided under the Civil Rights laws. And it stated that in the Althea v. Ginsburg case. There's also legislative history that indicates that Congress intended to provide that same scope of protection. So I think the relevant part of looking at the other statutes is the interpretative approach that courts have taken in interpreting other statutes' anti-retaliation provisions, which is consistently to construe the statute to affect the purpose of anti-retaliation provisions. What happens if the other side's right and there first of all is complete preemption, which has brought the case into federal court, and then there's no cognizable ERISA claim? Does Mr. Sexton get to refile the state claims in state court and then you ask yourself whether that preempted is related to a plan or is the case just over? There's nothing left that can happen. The Secretary's understanding is that the case would be over. There's been a finding of preemption as to that particular state law claim. And the finding of preemption, Your Honor, we also believe supports a broader construction of Section 510 for the reasons that you've indicated. You've preempted him out of a state law relief and now he only has a federal cause of action. And ERISA, which is a remedial statute, should provide him with a way of getting his foot in the door to litigate his claim. Okay. Thanks to all three of you for your very helpful oral arguments and briefs. We appreciate them. And we'll work our way through this tricky case. It will be submitted.